

A. John Davis (#0825)
Shawn T. Welch (#7113)
PRUITT GUSHEE
A Professional Corporation
1800 Beneficial Life Tower
Salt Lake City, Utah 84111
Telephone: (801) 531-8446

2004 JUN 30  P 10: 12

U.S. DISTRICT COURT
DISTRICT OF UTAH

Attorneys for Plaintiff San Juan
County, Utah, a Utah political subdivision

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SAN JUAN COUNTY, UTAH, a Utah political subdivision,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE<br><br>Defendants, | **AMENDED COMPLAINT**<br><br>Case No: 2:04CV00552<br><br>Judge Bruce S. Jenkins |

San Juan County, Utah ("San Juan"), a Utah political subdivision, for its Amended Complaint against The United States of America, and Department of the Interior, National Park Service, hereby alleges as follows:

### JURISDICTION AND VENUE

1. The claims asserted herein arise under 28 U.S.C. § 2409a.

2

2.This Court has subject matter jurisdiction under 28 U.S.C. § 2409a (quiet title), 28 U.S.C. § 1346(f) (quiet title), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 2201 (declaratory relief).

3.Venue is proper under 28 U.S.C. § 1391(e), as the lands which are the subject of this lawsuit are located in San Juan County, State of Utah.

## PARTIES AND INTEREST

4.San Juan is a county political subdivision of the State of Utah.

5.San Juan owns an interest in, and has statutory duties regarding, class D public roads and rights-of-way for such roads that lie within San Juan County, Utah, *inter alia*, pursuant to Utah Code Ann. §§ 72-3-105, 72-5-103–105, and 72-5-302.

6.Defendant United States of America is the owner of the lands traversed by the road and right-of-way subject to this lawsuit. The United States Department of Interior, National Park Service (hereinafter, "NPS") manages the subject lands.

## CONGRESSIONAL GRANT OF RIGHT-OF-WAY

7.Section 8 of the Mining Law of 1866, 14 Stat. 253, later codified as Revised Statute 2477, and 43 U.S.C. § 932 (repealed) (hereinafter, "R.S. 2477"), provides: "*And be it further enacted*, That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

8.R.S. 2477 rights-of-way are property rights that have been classified as a species of easement.

9. R.S. 2477 was a congressional self-executing grant and no application to or approval by the federal government was required for a right-of-way to be acquired as a perfected property interest.

10. During the operation of the grant, R.S. 2477 rights-of-way were acquired and perfected by acts evidencing the acceptance of a right-of-way for a public highway including construction or establishment of a public highway across public lands not otherwise reserved.

11. The scope of a perfected R.S. 2477 right-of-way is a measure of the bundle of property rights granted and accepted. The scope of the right-of-way is defined by the physical boundaries of the right-of-way as well as the uses to which it has been put during the operation of the grant.

12. The scope of a perfected R.S. 2477 right-of-way includes that which is reasonable and necessary for the uses to which the right-of-way has been put and accepted. At a minimum, the scope of the R.S. 2477 right-of-way includes that width actually utilized for public highway purposes during the operation of the grant.

## LONG-STANDING DEPARTMENT OF INTERIOR INTERPRETATION OF R.S. 2477

13. In 1939, R.S. 2477 regulations found at 43 C.F.R. § 244.55 (1939) stated:

> [R.S. 2477] becomes effective upon the construction or establishing of highways, in accordance with the State laws, over public lands not reserved for public uses. No application should be filed under said R.S. 2477 as no action on the part of the Federal Government is necessary.

14. In 1963, R.S. 2477 regulations found at 43 C.F.R. § 244.58 (1963) stated:

> Grants of [R.S. 2477 rights-of-way] become effective upon the construction or establishment of highways, in accordance with the State laws, over public lands, not reserved for public uses. No

3

application should be filed under R.S. 2477, as no action on the part of the Government is necessary.

15. In 1974, R.S. 2477 regulations found at 43 C.F.R. §§ 2822.1-2 & 2822.2-1 (1974) stated:

> No application should be filed under R.S. 2477, as no action on the part of the Government is necessary. ... Grants of [R.S. 2477 rights-of-way] become effective upon the construction or establishment of highways, in accordance with the State laws, over public lands, not reserved for public uses.

16. R.S. 2477 was repealed on October 21, 1976, but perfected R.S. 2477 rights-of-way in existence on that date remain as valid existing rights. 43 U.S.C.A. § 1769(a).

## LOCATION OF SAN JUAN'S SALT CREEK ROAD AND R.S. 2477 RIGHT-OF-WAY

17. The Salt Creek road crosses lands entirely within San Juan County, Utah.

18. The lands underlying the Salt Creek road lie within Townships 30, 30½ and 31 South, Ranges 19 and 20 East, S.L.M., however, many of the affected lands are unsurveyed and are therefore not capable of description by section and aliquot part, nor by workable metes and bounds calls.

19. Nevertheless, the Salt Creek road has appeared on official United States government maps since at least 1954. A copy of the relevant portions of The Needles Quadrangle, Utah, 15 Minute Series, United States Geological Survey ("USGS") map (1953, as edited in 1969) and Harts Point Quadrangle, 15 Minute Series, USGS map (1954, edited in 1971) depicting the Salt Creek road are attached hereto as Exhibit A and incorporated herein by this reference. Additionally, a section copy of that United States Department of Interior, Geological

4

Survey, "Canyonlands National Park and Vicinity, Utah" (1968) map depicting the entire Salt Creek road and surrounding lands is also attached in Exhibit A.

20. The precise line-plot location of the Salt Creek road, commencing in the NE1/4 of Section 30, Township 30 South, Range 20 East, S.L.M., and proceeding to Angel Arch in unsurveyed Township 31 South, Range 20 East, S.L.M., as surveyed via GPS by San Juan County road personnel and placed on overlay maps and highlighted to designate the road subject to this suit, is attached hereto as Exhibit B and incorporated herein by this reference. This line-plot data, providing the precise location of the road, will be provided to the Court and defendants in such format as may be warranted and upon request, with the limited exception of data commencing from the Angel Arch turnoff and proceeding to Upper Jump which is currently unavailable. In raw form, the line-plot data is not amenable to filing with the court.

21. The Salt Creek road lies within the exterior boundaries of Canyonlands National Park (hereinafter, "Canyonlands"), which is administered by NPS.

22. As referred to herein and shown on the attached exhibits, the Salt Creek road commences at the end of the pavement near Squaw Butte in the NW1/4NE1/4 of Section 30, Township 30 South, Range 20 East, S.L.M, and travels easterly for roughly one mile, and then turns south near Cave Spring in Section 29 and travels roughly three and one-half miles in a southerly direction to Peekaboo Spring. The distances set forth in this pleading are for reference and are subject to the precise measurements in the GPS data. Upon information and belief, the NPS has surveyed the subject road and additionally possesses the precise line-plot data regarding the Salt Creek road.

23. NPS has restricted the public's vehicle use of the Salt Creek road by a use permit-gate placed across the Salt Creek road near Cave Spring. NPS additionally caused a gate to be erected across the Salt Creek road at Peekaboo Spring, which lies near the northern township line of Township 31 South, in Range 20 East, S.L.M, and has entirely prohibited vehicular travel beyond the gate at Peekaboo Spring.

24. From the gate at Peekaboo Spring, the Salt Creek road travels south a distance of more or less seven and one-half miles to the junction of Salt Creek Canyon and Angel Arch Canyon.

25. From this junction, the Salt Creek road travels more or less one and one-half miles southeasterly through Angel Arch Canyon to a parking area near Angel Arch.

26. From the junction, the Salt Creek road travels more or less five miles in a southerly direction to Upper Jump.

27. The Salt Creek road that is the subject herein begins near Squaw Butte at the end of the pavement, proceeds to Cave Spring, to Peekaboo Spring, and to Angel Arch and Upper Jump, as specifically mapped and plotted in Exhibits A and B (hereinafter, the "Salt Creek road"). Moreover, certain locations of the road appear in United States cadastral surveys dating back at least to 1927, which information is in the possession and control of defendants.

## PERFECTION AND SCOPE OF SAN JUAN'S R.S. 2477 RIGHT-OF-WAY FOR THE SALT CREEK ROAD

28. On April 4, 1962 the Department of Interior, General Land Office filed a notice of withdrawal of the subject lands on its public records pertaining to the subject lands (also called its Historical Index) in anticipation of the creation of Canyonlands.

29. Congress thereafter created Canyonlands on September 12, 1964, by Pub. L. 88-590, 78 Stat. 934 (1964), codified at 16 U.S.C. § 271.

30. Congress expressly created Canyonlands "subject to valid existing rights". 16 U.S.C. § 271. In other words, prior existing rights-of-way remained after the creation of Canyonlands.

31. After 1866 and prior to the April 4, 1962 withdrawal of the underlying lands for the creation of Canyonlands, San Juan, on behalf of the public, acquired a perfected R.S. 2477 right-of-way for the Salt Creek road across the subject lands by acts evidencing the acceptance of the grant of an R.S. 2477 right-of-way, including, but not limited to:

    a. use and construction of the Salt Creek road by Rensselaer Lee Kirk, a.k.a. Lee Kirk who constructed and used the Salt Creek road during the 1890's and continued thereafter to use the same on a regular and non-exclusive basis to access his homestead, Kirk's Cabin, which is located south of Upper Jump, and to haul goods and things to and from his homestead, including by a wagon which remains at Kirk's Cabin;

    b. use and construction of the Salt Creek road by the Scorup & Somerville Cattle Company (hereinafter, the "S & S Company") on a regular and non-exclusive basis from the 1920's through 1965 to trail cattle and haul supplies to established cowboy camps in the West Fork of Salt Creek Canyon and to Kirk's Cabin (which the S & S Company ultimately purchased in 1942);

    c. use by hikers and archeological explorers on a regular and continuous basis from at least 1949 and continuing through the present;

7

d. use and construction by persons driving the entire Salt Creek road in jeeps on a regular and continuing basis beginning at least by 1954, including members of the S & S Company who hauled equipment and supplies in jeeps during the 1950's along the Salt Creek road;

e. use, construction and maintenance by explorers and sightseers in jeeps on a regular, continuing and non-exclusive basis from at least 1954 and continuing until NPS gated the road at Peekaboo Spring in 1998, which use, construction and maintenance of the road included the use of shovels and axes to clear the road of debris and make it ready for vehicle travel;

f. use, construction and maintenance by persons involved with commercially operated jeep tours on a regular, continuing and non-exclusive basis from at least 1958 until NPS gated the road in 1998;

g. use, construction and maintenance by bulldozer before 1956, and other incidents of maintenance and construction by blasting, bulldozer, heavy machinery, and uranium core-drillers operated by persons using the Salt Creek road for exploration purposes;

h. use, construction and maintenance by uranium prospectors from the mid-1950's through the creation of the park in 1964 on a regular and continuing basis, whose numerous mining claim locations have been filed in the San Juan County Recorder's office, and whose drift tunnels still exist in the Salt Creek Canyon;

i. use by the Honest John Uranium Corporation which established a mining camp at Upper Jump by 1957 and which used the Salt Creek road to haul goods, materials and equipment along the Salt Creek road to the Upper Jump;

j. use by oil and gas companies to access leases and drilling locations along the Salt Creek road, including the drilling of one or more oil wells within the Salt Creek canyon prior to 1962.

32. The foregoing uses, construction and maintenance occurred along essentially the same route of the Salt Creek road as it lies today.

33. In Utah, "[a] highway is dedicated and abandoned to the use of the public when it has been continuously used as a public thoroughfare for a period of ten years." Utah Code Ann. § 72-5-104 (prior law in accord).

34. The Salt Creek road was used and constructed as a public thoroughfare for decades prior to the reservation of the underlying lands for Canyonlands.

35. The Salt Creek road traverses a valid and perfected R.S. 2477 right-of-way sufficient in scope for vehicle travel as reasonable and necessary and according to the uses to which it was put prior to April 9, 1962.

36. By the foregoing acts of acceptance of the grant, San Juan acquired and is the owner of an R.S. 2477 right-of-way for the Salt Creek road. *See* para. 5, *supra*.

## FIRST CAUSE OF ACTION – QUIET TITLE

37. San Juan incorporates herein and realleges each of the foregoing paragraphs.

38. In 1995, NPS published its Backcountry Management Plan (hereinafter, the "BMP") that allowed continued vehicle use of the Salt Creek road. Nevertheless, the BMP

implemented a permit system and gate to reduce the number of vehicles traveling the Salt Creek road to prevent overuse of the Salt Creek Canyon.

39. NPS has since changed the BMP and determined to permanently close the Salt Creek road to vehicle travel by placing a permanent gate at Peekaboo Spring precluding any vehicle travel beyond the gate and thereby creating a case and controversy herein.

40. NPS' acts have wrongfully denied San Juan and the public the use of the Salt Creek road and disturbed San Juan's quiet enjoyment of its R.S. 2477 right-of-way.

41. San Juan is entitled to an order of this Court quieting title to the R.S. 2477 right-of-way for the Salt Creek road in San Juan.

## SECOND CAUSE OF ACTION – DECLARATORY RELIEF

42. San Juan incorporates herein and realleges each of the foregoing paragraphs.

43. NPS' gate system may not deprive San Juan of use of its R.S. 2477 right-of-way for vehicular travel and the gate at Peekaboo Spring wrongfully interferes with San Juan's and the public's use and enjoyment of the Salt Creek road.

44. San Juan is entitled to an order of this Court declaring NPS must allow vehicle use of the Salt Creek road and remove the gate at Peekaboo Spring.

## REQUEST FOR RELIEF

WHEREFORE, San Juan requests relief against NPS as follows:

1. An order quieting title in and to an R.S. 2477 right-of-way for the Salt Creek road in San Juan according to proof;

2. An order in declaratory relief requiring NPS to allow vehicular use of the Salt Creek road and to remove the gate at Peekaboo Spring;

3.  An order awarding costs and such further relief to San Juan as may be appropriate.

DATED this 30th day of June, 2004.

>    PRUITT GUSHEE
>
>    _____
>    A. John Davis
>    Shawn T. Welch
>    Attorneys for San Juan County, Utah

Plaintiff's Address:
117 South Main Street,
P.O. Box 9
Monticello, Utah 84535

pg\2116\03\plead\Amended Complaint - QTA

Exhibits/ Attachments to this document have **not** been scanned.

Please see the case file.